IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

JANE RUSSELL,                          )
                                       )
            Plaintiff,                 )
                                       )
                                       )        CIV-05-1326-M
v.                                     )
                                       )
JO ANNE B. BARNHART,                   )
  Commissioner of Social Security      )
  Administration,                      )
                                       )
            Defendant.                 )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying her application for supplemental security income benefits

under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 1382.  Defendant has

answered the Complaint and filed the administrative record (hereinafter TR___).  The matter

has been referred to the undersigned Magistrate Judge for initial proceedings consistent with

28 U.S.C. § 636(b)(1)(B).    For the following reasons, it is recommended that the

Commissioner's decision be affirmed.

1

I. Background

Plaintiff filed her application on February 20, 2003 (protective filing date). (TR 48-51). Plaintiff alleged that she became disabled on November 21, 2001, which was the day after Plaintiff's previous application for disability benefits was initially denied. (TR 62, 71).[1] Plaintiff alleged disability due to the following conditions: HIV infection, knee pain, night sweats, daily headaches, swollen glands, nausea, and fatigue. (TR 62). Plaintiff's application was administratively denied. (TR 23, 24). At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Darks ("ALJ"), at which Plaintiff, a medical expert ("ME"), and a vocational expert ("VE") testified. (TR 183-198).

At the hearing, Plaintiff testified (TR 185-187, 190-195) that she was 40 years old, weighed 315 pounds, lived with her daughter, drove a car, and had "good days" and "bad days." Plaintiff stated that she had been prescribed medications for her HIV infection but that she was not taking any medication for this condition because of lack of funds and insurance. Plaintiff described headaches occurring every other day, lasting two days, and resolved with medication but the medication makes her sleepy. She also described night sweats that occur two to three times a night and cause her to lose four to six hours of sleep per night, left knee pain occurring every day that "goes away" with anti-inflammatory medication, and depression that is helped by medication. Plaintiff stated that she lies down during the day

---

[1]Apparently, Plaintiff did not seek timely reconsideration of the previous initial determination, thus rendering the denial of the earlier application binding, and she was required to file a new application seeking benefits. See 20 C.F.R. § 404.905 (2005)("An initial determination is binding unless you request a reconsideration within the stated time period, or we revise the initial determination.").

two to three times per week for two to three hours if she has knee pain or a headache. Plaintiff estimated that she could sit for about two hours and stand for about an hour, that she can bend over the dishwasher, clean dishes, sweep, mop, run a vacuum cleaner, do laundry, and visit with her parents, and that her daughter assists her with these activities.

The VE described the vocational characteristics of Plaintiff's past relevant work as an administrative assistant and data entry clerk. (TR 187).  The ME testified that he had reviewed the record, that Plaintiff has severe impairments due to obesity, HIV infection, and left knee arthritis, and that her impairments do not singly or in combination meet or equal the requirements of a listed impairment. (TR 188-189).   The ALJ solicited the testimony of the VE concerning the availability of jobs for a hypothetical individual[2] who can lift up to ten pounds frequently and up to twenty pounds occasionally, sit or stand at will, bend forward only 45 degrees, and cannot climb, balance, crouch, or crawl. (TR 196).  The VE testified that such an individual could perform Plaintiff's previous jobs as an administrative assistant or data entry clerk and could perform other jobs, including the jobs of mail clerk, convenience store clerk, clerical sorter or compiler, and receptionist. (TR 196-197).

Following the hearing, the ALJ issued a decision (TR 16-21) in which the ALJ found that Plaintiff has severe impairments due to HIV infection, left knee pain, anemia, and obesity, that her subjective allegations of disabling pain and other non-exertional

---

[2]The transcript contains a number of blanks which are described as "inaudible" by the transcriber.  Neither party has asserted that these blank portions of the transcription render the record inadequate for review.

3

impairments were not credible, and that Plaintiff retains the capacity to perform her previous work as an administrative assistant or data entry clerk and also has the ability to perform other jobs available in the economy, including the sedentary jobs of clerical compiler and receptionist.(TR 20-21).  Based on these findings, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act and she is therefore not entitled to benefits.  The Appeals Council declined to review the ALJ's decision (TR 5-7), and Plaintiff now seeks judicial review of the final decision of the Commissioner.[3]

## II. Plaintiff's Claims

Plaintiff contends that there is not substantial evidence in the record to support the ALJ's assessment of Plaintiff's residual functional capacity ("RFC") and that there is not substantial evidence in the record to support the ALJ's determination concerning the credibility of Plaintiff subjective allegation of disabling pain and non-exertional impairments. The Commissioner responds that no error occurred in the ALJ's evaluation of the evidence and that there is substantial evidence in the record to support the ALJ's decision that Plaintiff is capable of performing her past relevant work and is therefore not disabled within the meaning of the Social Security Act.

## III. Standard of Review

---

[3]The decision by the ALJ operates as the final decision of the Commissioner when a claimant's request for review of an ALJ's decision is denied by the Appeals Council. 20 C.F.R. § 404.981 (2005).

Judicial review of this Complaint is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). The court will look to the record as a whole to determine whether the evidence which supports the Commissioner's decision is substantial in light of any contradicting evidence. Nieto v. Heckler, 750 F.2d 59, 61 (10th Cir. 1984); Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983)(*per curiam*). If the Commissioner fails to apply the correct legal standard or substantial evidence does not support the Commissioner's decision, the court may reverse the Commissioner's findings. Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984)(*per curiam*). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). To find that the Commissioner's decision is supported by substantial evidence in the record, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion. Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir. 1988).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§416(i), 1382c(a)(3)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. § 416.920(b)-(f) (2005); see also Williams v. Bowen, 844 F.2d 748, 750-752 (10th

Cir. 1988)(describing five steps in detail).  The claimant bears the initial burden of proving that she has one or more severe impairments.  20 C.F.R. § 416.912 (2005); Turner v. Heckler, 754 F.2d 326, 328 (10th Cir. 1985).  Where the plaintiff makes a *prima facie* showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show "the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." Turner v. Heckler, 754 F.2d at 328; Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

IV. Medical Record

The medical record reflects that Plaintiff sought treatment at a hospital emergency room on September 4, 2000, for a three-day headache with nausea and vomiting. (TR 173). The examining physician noted a CT scan of Plaintiff's head was conducted, that the test was negative, and that a physical examination revealed normal findings. (TR 174-175).  The only significant finding was a significantly low hemoglobin level. (TR 174-175).  Plaintiff refused admission to evaluate this finding, and the diagnosis was cephalgia (headache) resolved and severe anemia, most likely due to iron deficiency. (TR 175).  The record contains a report, unaccompanied by evidence of medical treatment, of a chest x-ray taken at the same hospital in May 2002. (TR 172).  According to the interpreting radiologist, the x-ray was unremarkable. (TR 172).

There is no intervening record of medical treatment of Plaintiff until December 2002. The medical record reflects that Plaintiff sought treatment for HIV infection at an Infectious Diseases Clinic in Wisconsin in December 2002.  A nurse examined Plaintiff, and the nurse's

office note of this examination indicates that Plaintiff stated she had been diagnosed with the HIV viral infection in August 2001, that she had not previously received treatment for the HIV infection, that she had two children and lived with her 16-year-old daughter, that she was unemployed, that she had tension headaches for which she took medication, and that she complained of some fatigue and some night sweats, no skin rashes, difficulty with blurred vision, a need for vision examination and eyeglasses, a chronic, intermittent cough and runny nose, and no pain. (TR 124-125).  Plaintiff reportedly also complained of intermittent, gastric-type reflux and stomach pain related to her diet that was well-controlled with anti-gastric medication and joint pain especially in the left knee for which she intermittently took anti-inflammatory medication. (TR 125).  She also described tension or vision headaches and situational depression related to her HIV diagnosis and recent relocation to Wisconsin. (TR 125).  In a physical examination, Plaintiff exhibited symmetrical and full range of motion, no neurological deficit, lymphadenopathy (swollen lymph nodes) in the cervical region that were not tender to palpation, and obesity. (TR 125-126).  No HIV medications were prescribed, and Plaintiff was advised to return for follow-up treatment after undergoing routine laboratory studies. (TR 126).

At a follow-up visit in March 2003, the examining nurse noted that Plaintiff stated she had increased her activity since the previous visit, including stair walking, and had lost about 17 pounds.  Plaintiff stated she had some achiness in her left knee for which she took anti-inflammatory medication, and the examiner noted that a left knee x-ray taken December 6, 2002, revealed very mild degenerative changes in the knee.  A physical examination revealed

full range of motion, including the left knee. (TR 116).  The examiner noted that Plaintiff was diagnosed as "HIV positive," that HIV medication therapy was again delayed, and that Plaintiff was directed to undergo the laboratory studies which she had failed to obtain.  (TR 116-118).  Plaintiff was encouraged to lose weight and to return in one to two months for follow-up treatment. (TR 117).  However, there are no further records of treatment at this clinic.

In a consultative examination for the agency conducted in May 2003 by Dr. Jankins, the physician noted that Plaintiff stated she had lost twenty pounds since March 2003 and that she "has been told that she has AIDS." (TR 132).  Plaintiff reportedly complained of "occasional" night sweats occurring for the previous six months, vomiting four to five times per month, daily headaches for the previous year, a history of "shingles" two years before, and left knee pain for one year helped by anti-inflammatory medication. (TR 132-133). Plaintiff estimated she could walk a block and lift eight to ten pounds, and Dr. Jankins noted Plaintiff was "able to take care of her own [activities of daily living]" and weighed 317 pounds. (TR 133).  The physician noted that Plaintiff had no difficulty getting on and off of the examination table, that she could perform a heel-to-toe walking test, that she had full muscular strength in all extremities, and that she could flex her left knee to 75 degrees with full extension with some crepitus. (TR 133).  Dr. Jankins indicated his diagnostic impression of morbid obesity, HIV infection, and left knee "discomfort." (TR 133-134).  Dr. Jankins further stated his opinion that Plaintiff has the ability to stand for at least an hour or possibly two to three hours in an eight-hour day and to sit for several hours at a time. (TR 134).

V. <u>RFC for Work and Credibility Determination - Fourth Step</u>

In his decision, the ALJ concluded that Plaintiff has the RFC to perform work at the light exertional level restricted to jobs not requiring her to stand for more than two to three hours in an 8-hour workday. (TR 16-19).   Plaintiff contends that this finding and the underlying credibility determination made by the ALJ with respect to her allegation of disabling non-exertional impairments are not supported by substantial evidence.

The ALJ's decision includes a summary of the relevant medical record, including the record of Plaintiff's emergency room treatment in September 2000, her evaluation by a nurse in December 2002 for treatment for her HIV infection, the report of the consultative examiner, Dr. Jankins, and the RFC assessment of an agency medical reviewer completed in August 2003. (TR 18).  The ALJ's decision reflects his conclusion based on the medical record and Plaintiff's testimony that Plaintiff's "primary health problem is her HIV positive status and obtaining medical care.   This problem however presents no symptoms or limitations for her at this point." (TR 19).   The ALJ further concluded that the record revealed Plaintiff "does experience some knee pain from time to time however this is not a constant problem.  The record indicates that her knee pain started in 2002." (TR 19).  The ALJ further noted the objective medical evidence in the record showing Plaintiff has "no cardio vascular problems," "full range of joint motion," "no pulmonary problems," and "no mental impairments." (TR 19).  The ALJ reasoned that Plaintiff "may in fact be precluded from prolonged standing on her feet due to her knee problem and her weight" and that the "credible evidence of record however shows that [she] is not precluded from sitting for at

least 6 hours in an eight hour day and standing for 2-3 hours" and "lifting at least 20 pounds occasionally and 10 pounds on a frequent basis." (TR 19). Based on this RFC finding and on the VE's testimony, the ALJ determined that Plaintiff is capable of performing her previous jobs as an administrative assistant and data entry clerk.

At the fourth step of the evaluation process required of administrative factfinders, the ALJ was required to determine whether the Plaintiff retains the RFC for perform the requirements of her past relevant work or other work that exists in significant numbers in the economy. At step four, the claimant bears the burden of proving her inability to perform the duties of her past relevant work. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993). At this step, the ALJ must "make findings regarding 1) the individual's [RFC], 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation, given his or her [RFC]." Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993). The assessment of a claimant's RFC necessarily requires a determination by the ALJ of the credibility of the claimant's subjective statements. "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)(footnote omitted).

Plaintiff contends that the ALJ erred by failing to consider all of her impairments in

determining her RFC for work and by failing to give sufficient reasons for his finding that Plaintiff's testimony concerning her impairments and their impact on her ability to work was not credible. In this case, the ALJ reviewed the scarce medical evidence of treatment of Plaintiff and the findings of the consultative and reviewing examiners.  The ALJ found that the objective medical evidence and Plaintiff's own subjective statements were not consistent with Plaintiff's allegation of disabling non-exertional impairments, including headache, knee, and joint pain, nausea, and fatigue, and this finding is well supported by the record. "Credibility determinations are peculiarly the province of the finder of fact," and such a determination will not be upset when it is supported by substantial evidence. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  The credibility determination "does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility the dictates of Kepler are satisfied." White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2001)(quotation omitted). Although the ALJ included in his decision a paragraph of boilerplate language (TR 19) that courts have held is not sufficient to support a credibility determination, see Hardman v. Barnhart, 362 F.3d 676, 679-680 (10th Cir. 2004), the boilerplate paragraph was not the only explanation provided for the ALJ's credibility determination.  It is merely unnecessary surplusage.

Plaintiff asserts that the ALJ's decision does not "provide a reviewable analysis of claimant's treatment records and the weight afforded the treating and examining physician reports" in determining her RFC for work.  Contrary to Plaintiff's assertion, the ALJ's

decision does reflect a well-supported summary of the Plaintiff's brief treatment records. Plaintiff points to no objective medical evidence in the record that is inconsistent with the ALJ's RFC finding. This contention is without merit.

Plaintiff contends that the ALJ failed to consider the effects of her obesity upon her RFC for work. However, the ALJ's decision belies this assertion. The ALJ specifically found that Plaintiff's obesity constitutes a severe impairment that, along with her knee impairment, limits her ability to stand. The ALJ's hypothetical inquiry posed to the VE included work-related restrictions of an inability to bend forward more than 45 degrees, climb, balance, crouch, or crawl. (TR 196). Accordingly, the ALJ considered the effects of Plaintiff's obesity on her ability to work, and no error occurred in this respect. There is substantial evidence in the record to support the ALJ's RFC assessment.

The VE testified that Plaintiff's previous jobs as an administrative assistant and data entry clerk were performed at the light exertional level. The agency has defined the "full range of light work" as requiring "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6. The VE also testified that, considering an individual who has an RFC to perform work at the light exertional level with the further exertional restrictions of an inability to climb, balance, crouch, or crawl, or bend forward more than 45 degrees, the individual would be capable of performing Plaintiff's previous jobs and, alternatively, other light and sedentary jobs available in the economy. (TR 196-197). The ALJ's hypothetical inquiry to the VE may have included the further restriction with regard to Plaintiff's ability to stand that he included

in his RFC determination.  However, the record does not clearly reflect that this significant restriction on Plaintiff's ability to perform work at the light exertional level was presented to the VE during the administrative hearing. (TR 196).  At the hearing, the VE was presented with a hypothetical individual who needed to "sit or stand at will and/or sit or stand intermittently and walk frequently and stand frequently." (TR 196).  The ALJ did not recognize the inconsistency between his RFC finding that Plaintiff was limited to standing for only 2 to 3 hours in a workday and the hypothetical inquiry posed to the VE at the administrative hearing.  Consequently, there is not substantial evidence in the record to support the ALJ's determination that Plaintiff can perform her previous jobs.

## VI. Fifth Step

However, the ALJ did not end his evaluation of the Plaintiff's case at the fourth step. Rather, the ALJ proceeded to the fifth step and concluded in an alternative determination, based on the VE's testimony concerning the availability of sedentary jobs, that Plaintiff is not disabled because she retains the capacity to perform other jobs available in the economy at the sedentary exertional level.[4]  (TR 21).  The RFC finding made by the ALJ that Plaintiff is capable of sitting for at least 6 hours in an eight-hour workday and standing for two to three hours is not inconsistent with the finding of an ability to perform jobs at the sedentary exertional level. 20 C.F.R. § 416.967(a)(2005)(defining sedentary as requiring mostly sitting and lifting up to 10 pounds).  Plaintiff does not challenge this alternative finding.  Because

---

[4]The VE identified the sedentary jobs of clerical sorter or compiler and receptionist and provided testimony concerning the numbers of such jobs in the economy. (TR 196-197).

there is substantial evidence in the record to support the ALJ's finding that Plaintiff has the RFC to perform other jobs available in the economy, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for supplemental security income benefits.  The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____June 5th_____, 2006, in accordance with 28 U.S.C. §636 and LCvR 72.1.  The parties are further advised that failure to file a timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656(10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this _____16th_____ day of _____May_____, 2006.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE

14